IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHEN DISTRICT OF
TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| CORONET HOWELL<br><br>Plaintiff,<br>and<br><br>v.<br><br>RIOT PLATFORMS, INC.; AND JOHN DOE EMPLOYEES<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.: 3:26-cv-00532<br><br><br><br><br>Jury Requested |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff **CORONET HOWELL,** ("Plaintiff"), and files this Original Complaint against **RIOT PLATFORMS, INC., and JOHN DOE EMPLOYEES** (collectively "Defendants") and in support thereof would respectfully show unto the Court as follows:

## I. NATURE OF ACTION

1. Plaintiff Coronet Howell brings this action under Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. § 1981 to remedy acts of employment discrimination and retaliation perpetrated against him by Defendants.

2. Plaintiff, Mr. Howell, was employed by Defendant Riot Platforms, Inc., as the only Black employee on his crew, working alongside 4-5 white coworkers, including supervisor, Rusty Knight.

3. Plaintiff alleges two separate incidents that form the basis of this lawsuit. The first occurring while Plaintiff was working at an active jobsite, he alleges to have heard one of his white coworkers use the N-word either toward him or in his presence. Plaintiff immediately reported the incident to Human Resources. Shortly after, Plaintiff alleges that he was assaulted and further racially discriminated against when his canteen was intentionally urinated in after reporting discrimination.

## II. PARTIES

4. Plaintiff has at all times relevant to this lawsuit been a resident of Dallas County, Texas.

5. Defendant Riot Platforms, Inc., is a foreign corporation organized and existing under the laws of the State of Nevada and with its principal place of business in Castle Rock, Colorado. Defendant is authorized to do business in Texas. Defendant has at least two major Bitcoin mining facilities in Texas, one at 2721 Charles Martin Hall Rd, Thorndale, TX 76567 ("Rockdale Facility") and the other at 6980 Farm to Market Rd 709 S, Corsicana, TX 75110 ("Corsicana Facility"). Defendant has systematically targeted Texas and availed itself of the forum. Defendant may be served with process by serving its registered agent, Capitol Corporate Services, Inc. at 1501 S. Mopac Expressway Suite 220 Austin, Texas 78746.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a charge of discrimination with the EEOC. On December 30, 2025, the EEOC issued a Notice of Right to Sue Letter to Plaintiff. Plaintiff files this Complaint within ninety (90) days after receipt of the Notice of Right to Sue Letter from the EEOC.

## IV. JURISDICTION AND VENUE

8. Plaintiff alleges to have been discriminated against because of his race. This Court has jurisdiction pursuant to the Civil Rights Act of 1886, 42 § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 et seq., and 28 U.S.C. § 1331 and § 1343(a)(4). Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred. Venue is further proper in this District pursuant to 28 U.S.C. § 1391(c). Defendant Riot Platform's Inc., is subject to personal jurisdiction in this District in that it maintain a facility and conduct business operations in this District. Therefore, venue is proper as to all Defendants, including the Doe employee(s).

## V. FACTUAL ALLEGATIONS

**A. Factual Background**

9. Plaintiff works as an electrical maintenance technician at Defendant Riot Platform, Inc.'s Corsican Facility. His primary responsibilities include but are not limited to: replacing PDU cards in modules, resetting tripped breakers, replacing switch gears, pulling wires, terminating wires, complete electrical shut down and restarting job site for preventive maintenance, and replacing fuses in fuse cabinets.

10. Plaintiff works as an electrical maintenance technician at Defendant Riot Platform, Inc.'s Corsican Facility. His primary responsibilities include but are not limited to: replacing PDU cards in modules, resetting tripped breakers, replacing switch gears, pulling wires, terminating wires, complete electrical shut down and restarting job site for preventive maintenance, and replacing fuses in fuse cabinets.

**B. The Racial Slur**

11. Mr. Howell is black and was employed by Employer as part of a crew that was otherwise entirely white. His supervisor, Rusty Knight, and several coworkers (Jacob Conkel, Trey Willis, Reece Kemp, and Jonas) had a close working relationship and were brought onto the team after Mr. Knight's hiring as supervisor. Around the end of July 2025, while performing work duties, Mr. Howell alleges to have overheard a racial slur (the N-word) either directed at him or spoken in his presence. At the time, he initially believed the slur had been made by a coworker named Jacob. Immediately after uttering the N-word, Jacob stated "Oh you can't say that."

12. At the time Jacob made the racial slur, Mr. Knight and Trey Willis were standing at the tailgate of the Polaris ATV (while Mr. Howell was in the passenger seat – nobody was in the driver's seat). After Jacob made the racial slur, Mr. Knight (overhearing the same) taps Mr. Howell on the

hardhat with a grin, asking Mr. Howell "[H]ave you made the phone call yet?" (referencing a report to HR). Mr. Knight then stating "[T]hat's why you need to be with people who understand you."

13. Upon hearing the racial slur, Mr. Howell immediately reported the incident to human resources (HR). The same week as reporting the racial slur to HR, Mr. Knight pulls Mr. Howell aside for a "one v. one" conversation that took place at the work site. During this discussion it is alleged that Mr. Knight was attempting to essentially serve as a character witness for Jacob Conkel, explaining that "he would never say something like that" and claiming that it wasn't the "N-word" but rather "Megger" referencing a tool/instrument known as a megohmmeter.

14. Upon hearing this, Mr. Howell reiterates that Jacob stated, "Oh you can't say that." By saying this, Mr. Conkel acknowledges that he broke company policy, made a racially charged discriminatory statement with intent, and mocked the same. Thereafter it is alleged that Mr. Knight makes an inconsistent statement claiming that he was not present at the time, then stating "[O]h I was there, I just don't know what was said." These inconsistencies minimize racial epithets. Mr. Howell further alleges that his direct supervisor Mr. Knight's actions caused obstruction and interference with a protected activity (reporting race discrimination).

15. On August 13, 2025, a meeting is held where Mr. Howell explains how he faced racial discrimination throughout his life, including most recently with Employer. During this meeting, Mr. Howell was repeatedly interrupted by Trey Willis, Jacob Conkel, and Reece Kemp. During the meeting, Mr. Howell stated that "it has come full circle," indicating that, as a result of the employees' rumor-spreading and deliberate interference with the investigation, he had learned that Mr. Knight was now being identified as the individual allegedly responsible for the slur. Mr. Howell claims that he remained firm in his reports that it was Jacob Conkel and not Mr. Knight who was responsible for the racially charged slur, but that Mr. Knight and HR had knowledge of the slur ratifying the same.

**B. Retaliatory Intentional Urination**

17. Following the August 13, 2025, meeting Mr. Howell was off for approximately 4 days. Upon returning to his workstation, he finds his personal items disturbed and water bottle contaminated with urine. Upon finding his water bottle, Mr. Howell unscrews the cap and takes the water bottle over to lead Damon Hughes. Mr. Hughes responding, "Get that out of my face." Mr. Howell then takes it to lead Carlos Hernandez who responds, "Get that out of my face" and recommends that Mr. Howell take a picture of it. In this context, both coworkers confirmed the bottle smelled foul and reacted with disgust. On information and belief during the course of HR's investigation, one of these coworkers stated that "[G]un to my head, I would probably say it is urine."

18. The timing of the incident—occurring immediately after Mr. Howell's reports of racial slur—suggests that it was retaliatory. Defendant Riot Platforms Inc., later suggesting the smell could be spoiled Gatorade, but this explanation is inconsistent with the timing, the outcomes, and the disturbance of items. It is further inconsistent with the statements and/or reactions of Messrs Hernandez and Hughes and the foul odor that Mr. Howell inhaled without his knowledge or consent.

19. When the "N-Word" was uttered the "Megger" tool was not being used. Plaintiff alleges that immediately after the "N-Word" was said, Jacob Conkel acknowledges "[O]h you can't say that." The temporal nature of the "N-Word" being said, the "Megger" cover-up, and the intentional exposure to bodily fluids without consent reasonably points to racial discrimination and retaliation.

20. Additionally, Plaintiff alleges that at least one employee of Riot Platforms, Inc., has stated to him that "[I] hear it all the time" regarding the "N-Word" and that use of the "N-Word" was widely accepted and ratified by Defendant Riot Platforms, Inc., and its employees.

21. Plaintiff further alleges that employees of Riot Platforms, Inc., essentially work and interact in segregation split between the white and people of color.

**Photo of the urination**



**Photo of Megohmmeter "Megger"**




22. In short, Mr. Howell alleges that he was subjected to racial harassment and retaliation while employed by Defendant Riot Platform, Inc. Specifically, Mr. Howell alleges that he was the only black employee on his crew and was subjected to the following actions:

- The use of a racial slur (N-word) directed at him or in his presence.
- Shortly after reporting the slur, he returned to his workstation to find his personal items disturbed and water bottle intentionally contaminated with urine.
- Riot Platform, Inc., conducted an investigation failing to take corrective action, despite knowing the harassment and retaliatory behavior occurred.

23. Mr. Howell alleges that the above actions occurred because of his race, both in the initial harassment (racial slur) and the retaliatory harassment (urine in bottle, exclusion by coworkers). Further, Riot Platform, Inc.'s failure to take meaningful action after reporting the discrimination contributed to and reinforced the hostile work environment and racially charged environment.

24. The discriminatory actions began in late July 2025, when Mr. Howell overheard the N-word, *supra*. On August 23, 2025, at around 7:45 a.m., Mr. Howell alleges to have discovered that someone intentionally urinated inside his water bottle exposing him to bodily fluids without his consent.

25. As a result of the racial slur, the subsequent targeting, the intentional urination incident, and Defendant Riot Platform, Inc.'s failure to protect Mr. Howell, Plaintiff experienced severe emotional distress, including loss of sleep, loss of appetite, anxiety, and humiliation.

26. Plaintiff reasonably believed he was being targeted because of his race and in retaliation for reporting racial discrimination. Defendants' conduct, and the retaliation following protected activity caused substantial emotional and physical distress and created intolerable working conditions.

**B. Foreseeability of Problem**

27.Glassdoor reports that 61%, or about three in five U.S. employees have witnessed or experienced discrimination in the workplace.[1] The same

28.The same survey reports that 42 percent of employed adults in the U.S. have experienced or witnessed racism in the workplace; the highest percentage of the four countries surveyed.[2]

**C. Purpose of the Law**

29.The federal anti-discrimination laws primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

30. Employers may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations. The right to expect that companies will prevent any form of discrimination is essential to the community. The right to expect that companies must care about workplace laws to protect us from damages is essential to the community.

---

[1] https://www.glassdoor.com/blog/new-study-discrimination/
[2] *Id.*

31. Defendant Riot Platform, Inc., knows that discrimination and retaliation is foreseeable as a potential problem in the workplace. Although foreseeable, Defendant Riot Platform, Inc., failed to prevent discrimination and retaliation against Mr. Howell.

## VI. CAUSES OF ACTION

### COUNT I – Race Discrimination, Civil Rights Act of 1886, 42 § 1981

32. The foregoing paragraphs are re-alleged and incorporated herein by reference.

33. Plaintiff's claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

34. This law entitles a person of color to equal opportunity and treatment in employment.

35. When an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

36. Plaintiff Coronet Howell, an African American, belongs to a protected group and was subjected to discrimination based on his race (black).

37. Defendant knew or should have known of the discrimination but took no prompt remedial or preventable actions.

38. The discrimination was obnoxious, severe, pervasive, and shocking to the conscious of the ordinary person. The discrimination ultimately interferes with the terms and conditions of his employment with Defendant.

39. Defendant and/or its employees/agents engaged in material adverse actions against Mr. Howell, including but not limited to the use of the "N-Word" and the alleged intentional urination.

40. Defendant violated the federal statute by intentionally discriminating and retaliating against Mr. Howell; and as a direct result of the discrimination caused damages to Mr. Howell.

41. The liability can be either actual or constructive under the *McDonnell Douglas* framework.

42. Defendant knew or should have known that white employees used the "N-Word" and upon Mr. Howell reporting the same, his canteen was urinated in resulting in a foul odor and exposure to the non-consensual exchange of bodily fluids. Defendant was knowingly and actively discriminating based upon race, or in the alternative ratifying the conduct of the same.

43. Mr. Howell sustained damages, including economic damages, future pecuniary losses, past and future emotional pain, past and future suffering, past and future inconvenience, past and future mental anguish, past and future loss of enjoyment of life, and other nonpecuniary losses for which he is entitled to recovery under his causes of action.

44. Mr. Howell is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

45. Mr. Howell is also entitled to receive punitive damages because Defendant engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

**COUNT II – DISCRIMINATION UNDER TITLE VII**

46. The foregoing paragraphs are re-alleged and incorporated herein by reference.

47. At all times relevant to this lawsuit, Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute based upon Plaintiff's race (black).

48. Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

49. As alleged, *supra*, in the factual allegation section Plaintiff alleges that Defendant intentionally discriminated against Plaintiff because of his race in violation of Title VII.

50. Plaintiff further alleges that Defendant and its employees or agents created a hostile work environment claim through discriminatory words and actions towards Plaintiff because of Plaintiff's race. This conduct was so severe that it altered the terms and conditions of Plaintiff's employment and interfered with Plaintiff's work performance creating an intimidating, hostile and offensive work environment. As alleged, *supra*, Defendant ratified its employees conduct consisting of in part:

- Being left at job site because he's black.
- The derogatory use of the word "N-Word" at Plaintiff or in his presence.
- Attempted assault and battery *vis-a-vi* non-consensual transmission of bodily fluids regarding intentional urination in Plaintiff's water canteen.

51. Defendant is directly liable because it was negligent in discovering or remedying the discriminatory conduct. Plaintiff alleges that Defendant's human resources department repeatedly made statement that the security team was "finishing the footage" and would provide the video footage to Plaintiff. As of today, no footage was ever provided. On information and belief, the footage has been spoliated.

52. Plaintiff further alleges that Defendant is strictly liable for the discriminatory actions of its employees because the employees took a tangible employment action against Plaintiff.

53. Pleading in the alternative, Defendant is vicarious liable for its employees' discriminatory conduct in that Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though Plaintiff took advantage of Defendant's measures designed to prevent and correct discriminatory conduct. *Vance v. Ball State Univ*., 570 U.S. 421, 427 (2013).

**COUNT III – ASSAULT: VICARIOUS LIABILITY
AND RESPONDEAT SUPERIOR**

54. The foregoing paragraphs are re-alleged and incorporated herein by reference.

55. Texas law does not prevent an employee from bringing suit against an employer for an assault committed by another employee if the assault is attributable directly to the employer. *Medina v. Herrera*, 927 S.W.2d 597,601 (Tex. 1996).

56. At all relevant times, Defendants John Doe Employees were acting in the course and scope of their duties when the assaultive conduct occurred. Therefore, Defendant Riot Platforms, Inc., is liable based on the legal theory of vicarious liability. Moreover, Defendant Riot Platforms, Inc., took no actions, grossly retaining the John Doe Employee defendants.

57. Plaintiff alleges that he inhaled urine that was intentionally placed into his canteen by an employee or agent of Defendant, i.e., the John Doe Employee defendants. The foul odor caused an immediate repulsive disgust and emotional injuries and bodily harm to Plaintiff.

58. Plaintiff's injuries as alleged herein were substantially certain to occur to Plaintiff or others within a localized area of Plaintiff because Defendant Riot Platforms, Inc.'s conscious indifference in retaining, failing to supervise, train, or monitor the John Doe Employee defendants was substantially certain to result in injury.

59. Plaintiff alleges that the worker's compensation exclusivity rule does not apply. Defendants' actions and/or omissions were substantially certain to result in injuries to Plaintiff and the actions and/or omissions were a substantial factor in causing Plaintiff's harm and damages.

## VII. DAMAGES

60. As a direct and proximate result of Defendants' conduct, Plaintiff seeks to recover the following damages including economic damages and non-economic damages for mental anguish, emotional distress, and physical sickness.

a. Economic damages, including but not limited to: (i) all past lost wages and benefits, plus interest; (ii) front pay and benefits (iii) future loss of earning capacity (iv) past medical expenses and (v) future medical expenses.
b. Past and future non-economic damages, including but not limited to: (i) emotional

distress (ii) mental anguish (iii) loss of enjoyment of life and (iv) pain and suffering.

c. All reasonable attorneys fees incurred in connection with this action;
d. All costs of court, including but not limited to expert expenses and court costs;
e. Pre-judgment and post-judgment interest at the maximum legal rate;
f. Punitive damages; and
g. All other and further relief to which Plaintiff may be entitled.

## VIII. ATTORNEYS' FEES

61. Defendants' wrongful conduct has made it necessary for Plaintiff to retain the undersigned attorneys to represent him in bringing and prosecuting this action. Plaintiff therefore seeks recovery of all reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1981, et seq., § 1988 and/or Title VII, 42 U.S.C. § 2000e5(k).

## IX. JURY DEMAND

62. The Plaintiff requests trial by jury to the extent allowed by law.

## X. PRAYER

WHEREFORE, Plaintiff Coronet Howell respectfully requests that the Court award him:

a. Economic damages, including but not limited to: (i) all past lost wages and benefits, plus interest; (ii) front pay and benefits (iii) future loss of earning capacity (iv) past medical expenses and (v) future medical expenses.
b. Past and future non-economic damages, including but not limited to: (i) emotional distress (ii) mental anguish (iii) loss of enjoyment of life and (iv) pain and suffering.
c. All reasonable attorneys fees incurred in connection with this action;
d. All costs of court, including but not limited to expert expenses and court costs;
e. Pre-judgment and post-judgment interest at the maximum legal rate;
f. Punitive damages; and
g. All other and further relief to which Plaintiff may be entitled.

**Respectfully submitted,**

*<u>/s/ Taylor McCray Hunter</u>*
Taylor McCray Hunter
SBN: 24106123
taylor@thehunterlaw.com
Hunter Law Corporation, PC Texas Office
4131 North Central Expressway Suite 900
Dallas, Texas 75204
Phone: (214) 206 – 1200; Fax: (214) 206 – 1220

**COUNSEL FOR PLAINTIFF**